CHARLIE COOPER v. TERRITORY OF OKLAHOMA.

(Filed September 20, 1907.)

(91 Pac. 1032.)

1.  CRIMINAL LAW—Testimony of Accomplice—Corroboration Required.  One accused of a crime cannot be convicted upon the uncorroborated testimony of an accomplice, and the corroboration required must be the proof of substantial facts tending to incriminate the accused, aside from and without the aid of the testimony of the accomplice.

2.  SAME—Weight of Evidence.  Where there is competent corroborating evidence tending to connect the accused with the commission of the crime charged, the weight of such evidence is a matter for the jury; but, where the corroborating evidence is of such an uncertain and unsatisfactory character as not to warrant a reasonable inference of guilt, the court should set aside the verdict.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before Frank E. Gillette, Trial Judge.*

Reversed and remanded.

*Al J. Jennings,* for plaintiff in error.

*P. C. Simons, Att'y Gen'l,* and *Don C. Smith, Ass't,* for defendant in error.

Opinion of the court by

BURFORD, C. ·J.: The plaintiff in error, Charlie Cooper, was charged by indictment jointly with Henry Cooper, Dave Ellis, and Richard Ellis with the crime of horse stealing. The defendants, Henry Cooper, Dave Ellis, and Richard Ellis ·pleaded guilty to the charge, and the plaintiff in error pleaded not guilty. ·He was tried to a jury, a verdict of guilty returned, and sentenced by the judgment of the court to three years' imprisonment in the penitentiary.

The contention of plaintiff in error is that he was convicted upon the corroborated evidence of accomplices. The defendants were all boys residing in Comanche county where the crime was committed. The horses stolen belonged to a German farmer named Andrew Zach, and were kept in a pasture near his home. On Sunday night, November 13, 1904, two of the horses were stolen from the pasture, and were traced to near Foss, in Washita county, and there found in the possession of John Pruitt and Robert Ellis. The evidence for the prosecution consisted of the testimony of Andrew Zach, the owner of the horses; John ·Pruitt, who testified that he participated in the larceny and had not been indicted; Dave Ellis, a co-defendant, who pleaded guilty to the crime; C. R. Saunders, the officer who made the arrest of the plaintiff in error; Albert Dillon, a neighbor of Zach's. and John Ellis, the father of the Ellis boys who were implicated in the crime. The witness Zach testified only as to the loss and recovery of the horses. He gave no testimony as to the parties charged with the crime. John Pruitt testified that on the Sunday the horses were stolen he and Charlie Cooper, Henry Cooper, Dave Ellis, and Richard Ellis entered into an agreement to steal some horses, and that pursuant to this agreement they went to the pasture of old man Zach after night and stole the two horses in question; that Charlie Cooper was present and assisted in catching the horses and in taking them out of the pasture, and on the road they were turned over to him and Robert Ellis to take away and dispose of.

He also stated that he and Charlie Cooper and Robert Ellis rode together to the place where the horses were stolen, while Dave Ellis and Henry Cooper went another direction to look for some Indian ponies, but met them again and they all were at the pasture when the horses were taken from the pasture. He also testified that Charlie took off his belt and put it on the neck of one of the horses, and the belt was dropped and lost. This lost belt was found by Mr. Zach, and was produced at the trial, but there was a disputed question as to whose belt it was. He also testified that Charlie Cooper wore boots on the night of the larceny with tacks in the soles. Dave Ellis testified to substantially the same state of facts, admitted that he and Harry Cooper went away from the Cooper place first, and afterwards met the other three, Charlie Cooper, John Pruitt, and Robert Ellis, and went together to the Zach pasture, and stole the horses. He also testified that a glove which was found at the place of the larceny was dropped by Harry Cooper. Albert Dillon testified that he lived about three-fourths of a mile south of the Zach place, and that he saw Harry Cooper and Dave Ellis pass his place going south about dark. Charles R. Saunders testified that he was deputy sheriff and made the arrest of the plaintiff in error; that on Tuesday after the larceny he went to Zach's place and made an examination of the pasture and the fences; that he found where a post was broken down, and found horse tracks, and the track of a person at the point where the post was down; that in the tracks of the person there were the imprints of nails in the sole of the shoe or boot; that the bottom was full of nails or tacks; that the track was about the size of a six or seven shoe; that two or three weeks later he arrested Charlie Cooper at his home, and that the boots he was wearing were boots that would make about the sized track as the one found in the Zach pasture, and that he had the bottom of his boots full of nails. He made no measurement of either the boots or the tracks, but estimated the size by putting his own foot in the tracks. John Ellis, father of Robert and Dave, testified that he had seen Charlie

Cooper frequently, and that he usually wore a belt, but that he had seen him wear different ones, and he would not state whether the one exhibited was his or not. He also testified that his son Robert was then in the penitentiary for this same offense, and David was present as a witness for the territory.

Upon this testimony the territory rested. The defendant then went upon the stand in his own behalf and testified that Pruitt, the two Ellis boys, and his Brother Harry left his father's house about 12 or 1 o'clock P. M. on Sunday, and that he did not go with them; that he stayed at home until about four o'clock, when he went to Mr. Richardson's, and stayed until about dark. He then returned directly home, and went to bed with his brother George, who was in bed at the time. That he had an intimation that those boys were getting his younger brother, Harry, into some difficulty, and, after Harry Cooper and Dave Ellis left, he ordered Pruitt and Robert Ellis off his father's place; that he found out they were going to do something, but did not know what it was, and had no knowledge of the larceny until after it became public. He also stated: That at the time of the larceny he was wearing boots with tacks in the bottoms; that no one ever examined his boots after he was arrested. Harry Cooper testified that he was 14 years of age, a brother of the accused; that he had pleaded guilty to the charge in the indictment; that he, Dave Ellis, John Pruitt, and Robert Ellis stole the horses from the Zach pasture, and that his brother, Charlie, was not present. That the belt and glove found in the pasture were his, and that he was wearing them at the time of the larceny. That he had nails in the bottoms of his shoes, and made the tracks testified about. He exhibited the shoes worn at the time, with tacks in the soles. That he and Dave Ellis left the Cooper home about 12 o'clock on Sunday afternoon, and rode north to see about some Indian horses; that when they returned they met John Pruitt and Robert Ellis about a mile north of the Cooper place with three horses, leading one and riding two. Robert Ellis had left the horse he rode away in the af-

ternoon, and was riding a gray horse. He left the others about 11 o'clock and returned to his home and got there about 12 o'clock. It is seven miles to the Zach place, where the horses were stolen. George R. Cooper testified that he is a brother of the defendants, and lived with his father at the Cooper home. He left home on Sunday morning and went to visit an uncle six miles away, and remained until about dark; that he went to bed early and his brother Charlie came in about eight or nine o'clock and went to bed with him; that his brother Harry and Dave Ellis came in after he had been asleep three or four hours—he was unable to give the time, but it was very late. He also identified the belt in evidence as belonging to his brother Harry. W. A. Richardson testified that he is a farmer and lives in the Cooper neighborhood; that Charlie Cooper came to his place on Sunday, the 13th of November, about 3 o'clock in the afternoon, and remained there until about dark, or until a little after. Edward Isbell testified that he lives about one and a half miles from Cooper's place; that he saw Charlie Cooper at Richardson's place on the afternoon of Sunday, the 13th of November, between five and six o'clock. He also testified that Charlie Cooper's reputation for truth and honesty was good in the neighborhood. Mrs. S. J. Fulcher testified to the good reputation of Charlie Cooper for truth and honesty. William Naggs, a neighbor of the Coopers, testified to the good reputation of Charlie for truth and honesty.

The foregoing testimony embraces all the substantial facts in evidence. No witness for the prosecution, other than the confessed accomplices, has in any way connected the accused with the commission of the crime, and no witness has put him in company with them at any time or place after they left the Cooper home. The only facts relied upon as corroboration of the accomplices are the belt and tack prints in the tracks. The belt was not shown to be his by any of the witnesses, and there was positive testimony to the effect that it was not his, while the tack prints could have as easily been made by some of the guilty criminals.

The law forbids the conviction of one accused of crime upon the uncorroborated evidence of accomplices, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. To warrant a conviction upon the testimony of an accomplice, there must be corroborating evidence tending to incriminate the accused, aside from and without the aid of the testimony of the accomplice. The corroboration will not be sufficient if it tends merely to raise a suspicion as to the guilt of the accused. *People v. Ames,* 39 Cal. 403; *People v. Warren,* 39 Cal. 661. *People v. Thompson,* 50 Cal. 481. This court said in *Hill v. Territory,* 15 Okla. 212, 79 Pac. 757: "In a prosecution for burglary, where the evidence of an accomplice is corroborated by other evidence which tends to connect the defendant with the commission of the offense, the weight of such corroborating evidence is a matter for the jury. After verdict found based upon such evidence, this court will not disturb the judgment." It must be understood that what was there meant is that there is some substantial evidence corroborating the accomplice and tending to connect the accused with the commission of the offense. But, where the corroborating evidence is of such a slight, uncertain, and unsatisfactory character as not to warrant a reasonable inference of guilt, the court should not permit a verdict to stand. We think the corroborating evidence in this case is of this character, and it was error to overrule the motion for new trial.

The judgment of the district court is reversed and cause remanded, with directions to the district court of Comanche county to grant a new trial.

Gillette, J., who presided in the court below, not sitting; Pancoast and Garber, JJ., absent; all the other Justices concurring.